**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HUB GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> GO HUB GROUP HOLDINGS, CORP. <br><br> Defendant. | Case No. 1:19-cv-7648 <br><br> **TRIAL BY JURY DEMANDED** |

**COMPLAINT**

Plaintiff Hub Group, Inc., by its attorneys, Quarles & Brady LLP, hereby states its

Complaint against Defendant Go Hub Group Holdings Corp., as follows:

### THE PARTIES

1.      Plaintiff Hub Group, Inc. ("Hub Group") is a Delaware corporation with its

principal place of business located at 2000 Clearwater Drive, Oak Brook, IL 60523.

2.      Upon information and belief, Defendant Go Hub Group Holdings Corp. ("Go Hub

Group") is a Florida corporation with its principal place of business at 8005 NW 80 St, Unit 1,

Miami, FL 33166.

### JURISDICTION AND VENUE

3.      This is an action for trademark infringement arising under Section 32(1) of the

Lanham Act, 15 U.S.C. § 1114(1); false designation of origin arising under Section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a); unfair competition arising under Section 43(a) of the Lanham

Act, 15 U.S.C. § 1125(a); deceptive trade practices arising under the Illinois Uniform Deceptive

Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*; trademark infringement under Illinois common law; and for cancellation of a federal trademark registration under 15 U.S.C. § 1119.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1121, 1331 and 1338(a)-(b).

5.      This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a).

6.      This Court has personal jurisdiction over Go Hub Group under 735 Ill. Comp. Stat. 5/2-209 because Go Hub Group transacts business within the State of Illinois and the Northern District of Illinois either directly or through its agents, Team DGD, Inc., and Truck Hub, LLC.

7.      Hub Group incorporates herein paragraphs 49-61 as support for its allegation of personal jurisdiction.

8.      Go Hub Group has caused and is causing injury and damages within Illinois and this judicial district by committing infringing acts within Illinois and this judicial district through its use of various HUB-related marks.

9.      Venue in the Northern District of Illinois is proper under 28 U.S.C. § 1391.

## FACTS GIVING RISE TO THIS ACTION

### Hub Group

10.     Hub Group is a world-class supply chain solutions provider that offers multi-modal transportation services throughout North America, including intermodal, truck brokerage, dedicated trucking and logistics services.

11.     Hub Group was founded as Hub City Terminals in 1971 just outside of Chicago.

12.     Throughout the 1970s, Hub Group expanded across North America, and in 1985 unified its intermodal network under the "Hub Group" umbrella.

13.     In 1996, Hub Group went public just prior to its 25th anniversary.

14.     In or about 1998, Hub Group introduced its own fleet of more than 2,000 containers, which has grown to more than 37,000 containers today.

15.     Since its founding in 1971, Hub Group has grown to become one of the largest transportation management companies in North America.

16.     Due to its long-standing presence in transportation management, Hub Group has become a well-known and respected name in the industry.

17.     Hub Group has grown from a traditional intermodal marketing company into a multi-modal solutions provider delivering reliability, visibility and value to its customers every day.

18.     The supply chain needs of Hub Group's customers have become complex.

19.     Hub Group provides increased speed and improved visibility into supply chains through the use of state-of-the-art technology and satellite tracking of containers.

### Hub Group Marks

20.     Since at least as early as 1986, Hub Group has used variations of the trademark HUB (hereinafter "HUB marks") in connection with its ever-expanding services, which have grown to include intermodal, truck brokerage, dedicated trucking, managed transportation, freight consolidation, warehousing, international transportation and other logistics services.

21.     The HUB marks include, but are not limited to:  HUB GROUP, HUB GROUP DEDICATED, HUB GROUP DEDICATED SERVICES, HUB GROUP TRUCKING, HUBPRO, and HUB GROUP CAPACITY SOLUTIONS.

22.     Hub Group has acquired common law rights in its HUB marks through its use of the HUB marks in association with its services.

-3-

23.      In addition to Hub Group's common law rights, Hub Group also owns a number of registrations for its HUB marks.

24.      Hub Group owns U.S. Registration No. 1,997,149 for HUB GROUP ("the '149 Registration"), a copy of which is attached as **Exhibit 1**.  The '149 Registration is valid and subsisting, and is *prima facie* evidence of Hub Group's exclusive right to use the HUB GROUP mark in commerce in connection with the services specified in the registration.  The '149 Registration has achieved incontestable status.

25.      Hub Group owns U.S. Registration No. 4,746,318 for H HUB GROUP TRUCKING & Design mark ("the '318 Registration"), a copy of which is attached as **Exhibit 2**. The '318 Registration is valid and subsisting, and is *prima facie* evidence of Hub Group's exclusive right to use the H HUB GROUP TRUCKING & Design mark in commerce in connection with the services specified in the registration.

26.      Hub Group owns U.S. Registration No. 4,949,945 for S HUB GROUP CAPACITY SOLUTIONS & Design mark ("the '945 Registration"), a copy of which is attached as **Exhibit 3**.  The '945 Registration is valid and subsisting, and is *prima facie* evidence of Hub Group's exclusive right to use the S HUB GROUP CAPACITY SOLUTIONS & Design mark in commerce in connection with the services specified in the registration.

27.      Hub Group owns U.S. Registration No. 4,949,946 for HUB GROUP CAPACITY SOLUTIONS ("the '946 Registration"), a copy of which is attached as **Exhibit 4**.  The '946 Registration is valid and subsisting, and is *prima facie* evidence of Hub Group's exclusive right to use the HUB GROUP CAPACITY SOLUTIONS mark in commerce in connection with the services specified in the registration.

28.　　Hub Group owns U.S. Registration No. 5,487,111 for HUBPRO ("the '111 Registration"), a copy of which is attached as **Exhibit 5**.  The '111 Registration is valid and subsisting, and is *prima facie* evidence of Hub Group's exclusive right to use the HUBPRO mark in commerce in connection with the services specified in the registration.

29.　　Hub Group owns U.S. Registration No. 5,587,286 for HUB GROUP DEDICATED ("the '286 Registration"), a copy of which is attached as **Exhibit 6**.  The '286 Registration is valid and subsisting, and is *prima facie* evidence of Hub Group's exclusive right to use the HUB GROUP DEDICATED mark in commerce in connection with the services specified in the registration.

30.　　Hub Group owns U.S. Registration No. 5,587,287 for HUB GROUP DEDICATED ("the '287 Registration"), a copy of which is attached as **Exhibit 7**.  The '287 Registration is valid and subsisting, and is *prima facie* evidence of Hub Group's exclusive right to use the HUB GROUP DEDICATED mark in commerce in connection with the services specified in the registration.

31.　　Hub Group owns U.S. Registration No. 5,681,287 for HUB GROUP DEDICATED SERVICES ("the '1,287 Registration"), a copy of which is attached as **Exhibit 8**. The '1,287 Registration is valid and subsisting, and is *prima facie* evidence of Hub Group's exclusive right to use the HUB GROUP DEDICATED SERVICES mark in commerce in connection with the services specified in the registration.

32.　　Hub Group owns U.S. Registration No. 5,692,458 for HUB GROUP DEDICATED SERVICES ("the '458 Registration"), a copy of which is attached as **Exhibit 9**. The '458 Registration is valid and subsisting, and is *prima facie* evidence of Hub Group's

exclusive right to use the HUB GROUP DEDICATED SERVICES mark in commerce in connection with the services specified in the registration.

33.    Hub Group has made substantial investments in advertising and promoting its transportation management services under its HUB marks.

34.    Hub Group has established goodwill in the HUB marks and the services sold under same.

35.    Hub Group's customers and the public in general have come to know and recognize Hub Group's HUB marks and associate same with Hub Group and its services.

36.    Accordingly, the HUB marks are distinctive and have acquired secondary meaning.

## The HUB Marks Family

37.    Hub Group's HUB marks are part of a family of marks because they all share the same common "HUB" word, which is the distinguishing element of the marks.

38.    Hub Group has made substantial investments in advertising and promoting its services under its family of HUB marks.

39.    Hub Group has established goodwill in its family of HUB marks and the services sold under same.

40.    Accordingly, Hub Group's family of HUB marks is distinctive and has acquired secondary meaning.

## Defendant's "Go Hub" Marks

41.    Go Hub Group is attempting to create its own family of HUB-formative trademarks to promote and sell trucking-related services in the same markets and channels in which Hub Group sells its services.

-6-

42.     Upon information and belief, Go Hub Group owns and controls the Freight Hub Group website at https://gofreighthub.io/asset-based-3pl/ ("Freight Hub Group website").

43.     On the "About Us" section of the Freight Hub Group website, Go Hub Group describes its business as the "Hub Family" with branding for TruckHub, FTL Hub, LTL Hub, Dray Hub, HAZMAT Hub and WHSE Hub.  (About Us, https://gofreighthub.io/asset-based-3pl/).

44.     Go Hub Group explains on the Freight Hub Group website that it created these "sub brands to help clients from start to finish" and that it offers "domestic solutions for Last-Mile (GoLTLHub), Nationwide Full Truckload (GoFTLHub), & Container Drayage (GoDrayHub)."  (About Us, https://gofreighthub.io/asset-based-3pl/).

45.     All of the related companies on, or accessible through, the Freight Hub Group website, utilize the same phone number (1.888.219.4544) and address (8005 NW 80 St, Unit 1, Miami, FL 33166).

46.     Go Hub Group has applied with the U.S. Patent and Trademark Office ("USPTO") for federal registration of the following marks:

(a)     TRUCKHUB (No. 88398136 (word));

(b)     FTL HUB (No. 88396098 (word) & No. 88396114 (design));

(c)     LTL HUB (No. 88396218 (word) & No. 88396227 (design));

(d)     DRAY HUB (No. 88396147 (word ) & No. 88396170 (design));

(e)     HAZMAT HUB (No. 88396191 (word) & No. 88396196 (design)); and

(f)     WHSE HUB (No. 88396243 (word) & No. 88396261 (design));

(collectively "Go Hub marks").  Copies of the applications for each of these marks are attached as **Exhibits 10-20**.

47.     Go Hub Group represented to the USPTO that it is the owner of the Go Hub marks, and that Go Hub Group is using the Go Hub marks in commerce in connection with, among other things: freight transportation by air, rail, ship or truck; supply chain logistics; and warehousing services.

48.     Go Hub Group submitted to the USPTO various specimens of its use of the Go Hub marks, which were comprised of screen shots from the following websites: https://mytruckhub.com, https://goftlhub.io, https://goltlhub.io, https://godrayhub.io, https://gohazmathub.io, and https://gowhsehub.io.  Screenshots of these websites are attached as **Exhibits 21-26.**

### Defendant's Commercial Activities

49.     Go Hub Group describes on its Freight Hub Group website a "Hub Family" of assets.

50.     Go Hub Group advertises on its Freight Hub Group website an ability to provide "nationwide transportation across the USA" with its "own assets."

51.     Upon information and belief, Go Hub Group provides asset based, nationwide transportation services through its agent, Team DGD, Inc. d/b/a FTL Hub ("FTL Hub").

52.     FTL Hub is a federally registered motor carrier with interstate operating authority under US DOT # 1577726 and MC # 640303.

53.     FTL Hub advertises itself on the internet as providing "asset-based full truckload solutions that span 48 states of our nation."

54.     FTL Hub holds itself out to the public in job postings as a "technology-based nationwide carrier" that provides services "across all 48 States" and specializes in "nationwide full truck freight."

55.     Upon information and belief, FTL Hub-branded trucks, and FTL Hub-employed drivers, provide transportation services that operate within and/or terminate within the State of Illinois and the Northern District of Illinois.

56.     FTL Hub has further registered with the Florida Secretary of State to use the fictitious name Freight Hub Group, which matches the branding on the Freight Hub Group website.

57.     Upon information and belief, Go Hub Group develops and sells transportation management software called Truck Hub through its agent, Truck Hub, LLC ("Truck Hub").

58.     Truck Hub develops and sells transportation management software and applications across the United States using the mark TRUCK HUB.

59.     Upon information and belief, Truck Hub markets and sells the Truck Hub software in the State of Illinois and in this judicial district.

60.     Upon information and belief, Truck Hub has at least one customer in Chicago that currently utilizes the Truck Hub software.

61.     Go Hub Group publishes podcasts and YouTube videos that promote its services to the world using the various Hub-related marks discussed above, including in Illinois and this judicial district.

### Defendant's Willful Behavior

62.     Go Hub Group is aware of Hub Group's registered family of marks and continues to utilize its infringing Hub-related marks notwithstanding that Hub Group is the senior user.

63.     Eight of the applications filed by Go Hub Group with the USPTO have been refused because of a likelihood of confusion with the mark HUB GROUP.

64.     The refused applications include FTL HUB, LTL HUB, DRAY HUB and HAZMAT HUB.

65.     The USPTO refused each of these Go Hub marks, in part, because of the "overall similarity of the marks and the relatedness of the services."

66.     Go Hub Group is also aware of Hub Group's HUB marks because Hub Group has commenced an opposition to Go Hub Group's application to register TRUCKHUB.

67.     Go Hub Group is also aware of Hub Group's HUB marks because Hub Group sent a demand letter to Go Hub Group's registered trademark counsel on November 5, 2019.

68.     Notwithstanding Go Hub Group's knowledge of the HUB marks and the HUB family of marks, Go Hub Group continues to infringe by utilizing the marks TRUCKHUB, FTL HUB, LTL HUB, DRAY HUB, HAZMAT HUB, WHSE HUB, FREIGHT HUB GROUP, GO HUB GROUP HOLDINGS, HUB FAMILY and other similar HUB-related terms.

## COUNT I
## Federal Trademark Infringement - Lanham Act Section 32(1) (15 U.S.C. § 1114(1))

69.     Hub Group restates and incorporates by reference all previous allegations in paragraphs 1-68.

70.     Go Hub Group's actions constitute trademark infringement under 15 U.S.C. § 1114.

71.     Hub Group holds all right, title, and interest in the '149 Registration, the '318 Registration, the '945 Registration, the '946 Registration, the '111 Registration, the '286 Registration, the '287 Registration, the '1,287 Registration, and the '458 Registration, for the HUB marks.

72.     Hub Group has used and continues to use the HUB marks and the family of HUB marks to market and sell comprehensive intermodal, truck brokerage, dedicated trucking,

managed transportation, freight consolidation, warehousing, international transportation and other logistics services.

73.     The HUB marks are inherently distinctive and have acquired secondary meaning, both individually and as a family.

74.     Go Hub Group uses variations of the HUB marks, including FREIGHT HUB GROUP, FTL HUB, TRUCK HUB, DRAY HUB, LTL HUB, WHSE HUB, HAZMAT HUB, GO FREIGHT HUB GROUP and HUB FAMILY.

75.     Go Hub Group uses these variations of the HUB marks to market and sell transportation management related goods and services, reportedly since approximately the fall of 2018.

76.     The marks Go Hub Group uses incorporate the distinctive portion of Hub Group's HUB marks and family of HUB marks.  The addition of words such as "FREIGHT," "FTL," "TRUCK," and "LTL" do not distinguish the marks because those additions are merely descriptive of Go Hub Group's goods or services, as found by the USPTO in rejecting eight of the applications filed by Go Hub Group.

77.     The services that Go Hub Group and Hub Group offer under their HUB-related marks are closely related because they both are used to provide transportation-related services.

78.     The channels of trade used by Go Hub Group and Hub Group are overlapping.

79.     Accordingly, Go Hub Group's use of HUB-related marks to market and sell its services has caused and/or is likely to cause customers to mistakenly believe that Go Hub Group's services are sponsored by and/or affiliated with Hub Group, or vice-versa, constituting Lanham Act trademark infringement.

80.     Go Hub Group's infringement is intentional, willful, and/or in reckless disregard of Hub Group's trademark rights in the HUB marks.

81.     By infringing Hub Group's HUB marks, Go Hub Group has caused Hub Group to suffer and, unless enjoined by this Court, will cause Hub Group to continue to suffer, substantial injury, including lost profits, for which Hub Group is entitled to damages.

82.     If Go Hub Group's infringement is not enjoined, Hub Group will suffer irreparable harm that cannot adequately be compensated by a monetary award.

## COUNT II
## False Designation Of Origin - Lanham Act Section 43(a) (15 U.S.C. § 1125(a))

83.     Hub Group restates and incorporates by reference all previous allegations in paragraphs 1-82.

84.     Go Hub Group's actions constitute false designation of origin under 15 U.S.C. § 1125.

85.     Hub Group holds all right, title, and interest in the '149 Registration, the '318 Registration, the '945 Registration, the '946 Registration, the '111 Registration, the '286 Registration, the '287 Registration, the '1,287 Registration, and the '458 Registration, for the HUB marks.

86.     Hub Group has used and continues to use the HUB marks and the family of HUB marks to market and sell comprehensive intermodal, truck brokerage, dedicated trucking, managed transportation, freight consolidation, warehousing, international transportation and other logistics services.

87.     The HUB marks are inherently distinctive and have acquired secondary meaning, both individually and as a family.

88. Go Hub Group uses variations of the HUB marks, including FREIGHT HUB GROUP, FTL HUB, TRUCK HUB, DRAY HUB, LTL HUB, WHSE HUB, HAZMAT HUB, GO FREIGHT HUB GROUP and HUB FAMILY.

89. Go Hub Group uses these variations of the HUB marks to market and sell transportation management related goods and services, reportedly since approximately the fall of 2018.

90. The marks Go Hub Group uses incorporate the distinctive portion of Hub Group's HUB marks and family of HUB marks. The addition of words such as "FREIGHT," "FTL," "TRUCK," and "LTL" do not distinguish the marks because those additions are merely descriptive of Go Hub Group's goods or services as found by the USPTO in rejecting eight of the applications filed by Go Hub Group.

91. The services that Go Hub Group and Hub Group offer under their HUB-related marks are closely related because they both are used to provide transportation related services.

92. The channels of trade used by Go Hub Group and Hub Group are overlapping.

93. Go Hub Group's use of HUB-related marks to market and sell their goods and services has caused and/or is likely to cause customers to mistakenly believe that Go Hub Group's goods and services originate from Hub Group, constituting Lanham Act false designation of origin.

94. Go Hub Group's false designation is intentional, willful, and/or in reckless disregard of Hub Group's trademark rights in its HUB marks.

95. By falsely designating its solutions, Go Hub Group has caused Hub Group to suffer and, unless enjoined by this Court, will cause Hub Group to continue to suffer substantial injury, including lost profits, for which Hub Group is entitled to damages adequate.

96.     If Go Hub Group's false designation is not enjoined, Hub Group will suffer irreparable harm that cannot adequately be compensated by a monetary award.

## COUNT III
## Federal Unfair Competition - Lanham Act Section 43(a) (15 U.S.C. § 1125(a))

97.     Hub Group restates and incorporates by reference all previous allegations in paragraphs 1-96.

98.     Go Hub Group's actions constitute unfair competition under 15 U.S.C. § 1125.

99.     Hub Group holds all right, title, and interest in the '149 Registration, the '318 Registration, the '945 Registration, the '946 Registration, the '111 Registration, the '286 Registration, the '287 Registration, the '1,287 Registration, and the '458 Registration, for the HUB marks.

100.    Hub Group has used and continues to use the HUB marks and the family of HUB marks to market and sell comprehensive intermodal, truck brokerage, dedicated trucking, managed transportation, freight consolidation, warehousing, international transportation and other logistics services.

101.    The HUB marks are inherently distinctive and have acquired secondary meaning, both individually and as a family.

102.    Go Hub Group uses variations of the HUB marks, including FREIGHT HUB GROUP, FTL HUB, TRUCK HUB, DRAY HUB, LTL HUB, WHSE HUB, HAZMAT HUB, GO FREIGHT HUB GROUP and HUB FAMILY.

103.    Go Hub Group uses these variations of the HUB marks to market and sell transportation management related goods and services, reportedly since approximately the fall of 2018.

104.    The marks Go Hub Group uses incorporate the distinctive portion of Hub Group's HUB marks and family of HUB marks.  The addition of words such as "FREIGHT," "FTL," "TRUCK," and "LTL" do not distinguish the marks because those additions are merely descriptive of Go Hub Group's goods or services as found by the USPTO in rejecting eight of the applications filed by Go Hub Group.

105.    The services that Go Hub Group and Hub Group offer under their HUB-related marks are closely related because they both are used to provide transportation related services.

106.    The channels of trade used by Go Hub Group and Hub Group are overlapping.

107.    Go Hub Group's unfair competition with Hub Group was, and is, done willfully, maliciously, and/or in an intentional disregard of Hub Group's rights.

108.    As a direct and proximate result of Go Hub Group's wrongful actions, Hub Group has suffered, and continues to suffer, damage and loss.

### COUNT IV
### Illinois Deceptive Trade Practices (815 Ill. Comp. Stat. 510/1 *et seq.*)

109.    Hub Group restates and incorporates by reference all previous allegations in paragraphs 1-108.

110.    Hub Group has used and continues to use the HUB marks and the family of HUB marks to market and sell comprehensive intermodal, truck brokerage, dedicated trucking, managed transportation, freight consolidation, warehousing, international transportation and other logistics services.

111.    The HUB marks are inherently distinctive and have acquired secondary meaning, both individually and as a family.

112.     Go Hub Group uses variations of the HUB marks, including FREIGHT HUB GROUP, FTL HUB, TRUCK HUB, DRAY HUB, LTL HUB, WHSE HUB, HAZMAT HUB, GO FREIGHT HUB GROUP and HUB FAMILY.

113.     Go Hub Group uses these variations of the HUB marks to market and sell transportation management related goods and services, reportedly since approximately the fall of 2018.

114.     The marks Go Hub Group uses incorporate the distinctive portion of Hub Group's HUB marks and family of HUB marks.  The addition of words such as "FREIGHT," "FTL," "TRUCK," and "LTL" do not distinguish the marks because those additions are merely descriptive of Go Hub Group's goods or services as found by the USPTO in rejecting eight of the applications filed by Go Hub Group.

115.     The services that Go Hub Group and Hub Group offer under their HUB-related marks are closely related because they both are used to provide transportation related services.

116.     The channels of trade used by Go Hub Group and Hub Group are overlapping.

117.     Go Hub Group's use of the HUB marks is likely to cause confusion and/or misunderstanding as to the source, sponsorship, approval, and/or certification of Go Hub Group's goods and services.

118.     As a result of the foregoing, Go Hub Group has been and is engaged in deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*

119.     Go Hub Group's deceptive trade practices have caused, and unless restrained and enjoined by this Court, will continue to cause, a likelihood of consumer confusion, mistake, and

-16-

deception and irreparable injury to Hub Group's reputation, goodwill, and sales for which Hub Group cannot be adequately compensated by a monetary award.

120.     Upon information and belief, Go Hub Group's deceptive trade practices have been willful within the meaning of 815 Ill. Comp. Stat. 510/3.

**COUNT V**
**Common Law Trademark Infringement**

121.     Hub Group restates and incorporates by reference all previous allegations in paragraphs 1-120.

122.     Go Hub Group's use of the HUB marks infringes Hub Group's rights in the HUB marks in violation of Illinois common law.

123.     Hub Group has used and continues to use the HUB marks and the family of HUB marks to market and sell comprehensive intermodal, truck brokerage, dedicated trucking, managed transportation, freight consolidation, warehousing, international transportation and other logistics services.

124.     The HUB marks are inherently distinctive and have acquired secondary meaning, both individually and as a family.

125.     Go Hub Group uses variations of the HUB marks, including FREIGHT HUB GROUP, FTL HUB, TRUCK HUB, DRAY HUB, LTL HUB, WHSE HUB, HAZMAT HUB, GO FREIGHT HUB GROUP and HUB FAMILY.

126.     Go Hub Group uses these variations of the HUB marks to market and sell transportation management related goods and services, reportedly since approximately the fall of 2018.

127.     The marks Go Hub Group uses incorporate the distinctive portion of Hub Group's HUB marks and family of HUB marks.  The addition of words such as "FREIGHT," "FTL,"

"TRUCK," and "LTL" do not distinguish the marks because those additions are merely descriptive of Go Hub Group's goods or services as found by the USPTO in rejecting eight of applications filed by Go Hub Group.

128.  The services that Go Hub Group and Hub Group offer under their HUB-related marks are closely related because they both are used to provide transportation related services.

129.  The channels of trade used by Go Hub Group and Hub Group are overlapping.

130.  Go Hub Group's actions constitute trademark infringement under state common law.

131.  Go Hub Group's use of HUB-related marks to market and sell their goods and services has caused and/or is likely to cause customers to mistakenly believe that Go Hub Group goods and services are sponsored by and/or affiliated with Hub Group, constituting common law trademark infringement.

132.  Go Hub Group's infringement is intentional, willful, and/or in reckless disregard of Hub Group's trademark rights in its HUB marks.

133.  By infringing Hub Group's HUB marks, Go Hub Group has caused Hub Group to suffer and, unless enjoined by this Court, will cause Hub Group to continue to suffer substantial injury, including lost profits, for which Hub Group is entitled to damages.

134.  If Go Hub Group's infringement is not enjoined, Hub Group will suffer irreparable harm that cannot adequately be compensated by a monetary award.

135.  Go Hub Group's infringing acts have caused, and unless restrained and enjoined by this Court, will continue to cause, a likelihood of consumer confusion, mistake, and deception and irreparable injury to Hub Group's reputation, goodwill, and sales for which Hub Group cannot be adequately compensated by a monetary award.

-18-

## <u>COUNT VI</u>
### <u>Registration Cancellation</u>

136.    Hub Group restates and incorporates by reference all previous allegations in paragraphs 1-135.

137.    Hub Group holds all right, title, and interest in the '149 Registration, the '318 Registration, the '945 Registration, the '946 Registration, the '111 Registration, the '286 Registration, the '287 Registration, the '1,287 Registration, and the '458 Registration, for the HUB marks.

138.    Hub Group has used and continues to use the HUB marks and the family of HUB marks to market and sell comprehensive intermodal, truck brokerage, dedicated trucking, managed transportation, freight consolidation, warehousing, international transportation and other logistics services.

139.    The HUB marks are inherently distinctive and have acquired secondary meaning, both individually and as a family.

140.    Go Hub Group holds a registration for TRUCKHUB (Registration No. 5,654,896).  A copy of Registration No. 5,6548,96 is attached as **Exhibit 27**.

141.    TRUCKHUB incorporates the distinctive portion of Hub Group's HUB marks and family of HUB marks.  The addition of "TRUCK" does not distinguish the mark because this addition is merely descriptive of Go Hub Group's goods or services.

142.    The services that Go Hub Group and Hub Group offer under their HUB-related marks are closely related because they both are used to provide transportation related services.

143.    The channels of trade used by Go Hub Group and Hub Group are overlapping.

144.    Go Hub Group's use of TRUCKHUB to market and sell its services has caused and/or is likely to cause customers to mistakenly believe that Hub Group's services are

QB\60430075.1

sponsored by and/or affiliated with Go Hub Group, or vice-versa, constituting Lanham Act trademark infringement.

145.    Hub Group is the superior user of the HUB-related marks and has priority over Go Hub Group.

146.    Thus, Go Hub Group's registration of TRUCK HUB (Registration No. 5,654,896) must be cancelled under 15 U.S.C. § 1119.

147.    Resolving the validity of Go Hub Group'S TRUCK HUB mark in this matter is efficient and will result in cost-savings to the parties.

## **PRAYER FOR RELIEF**

WHEREFORE Hub Group seeks the following relief from this Court:

A.    A judgment against Go Hub Group that Go Hub Group has infringed, and continues to infringe, Hub Group's HUB marks in violation of 15 U.S.C. § 1114;

B.    A judgment against Go Hub Group that Go Hub Group has infringed, and continues to infringe, Hub Group's HUB marks in violation of Illinois state common law;

C.    A judgment that Go Hub Group's trademark infringement has been, and continues to be, intentional, willful, and/or reckless;

D.    An award of damages adequate to compensate Hub Group for Go Hub Group's infringement, but no less than the damages and/or disgorgement of profits permitted by 15 U.S.C. § 1117 and other applicable authority;

E.    A judgment against Go Hub Group that Go Hub Group has committed, and continues to commit, false designation of origin in violation of 15 U.S.C. § 1125;

F.    A judgment that Go Hub Group's false designation of origin has been, and continues to be, intentional, willful, and/or reckless;

-20-

G. An award of damages adequate to compensate Hub Group for Go Hub Group's false designation of origin, but no less than the damages and/or disgorgement of profits permitted by 15 U.S.C. § 1117 and other applicable authority;

H. A judgment against Go Hub Group that Go Hub Group has unfairly competed, and continues to unfairly compete, against Hub Group in violation of 15 U.S.C. § 1125;

I. A judgment that Go Hub Group's unfair competition has been, and continues to be, intentional, willful, and/or reckless;

J. An award of damages adequate to compensate Hub Group for Go Hub Group's unfair competition, but no less than the damages and/or disgorgement of profits permitted by 15 U.S.C. § 1117 and other applicable authority;

K. A judgment that Go Hub Group has been and is engaged in deceptive trade practices in violation of 815 Ill. Comp. Stat. 510/1 *et seq.*;

L. An order enjoining Go Hub Group from registering any HUB-related marks with the USPTO pursuant to 15 U.S.C. § 1119, including a withdrawal or abandonment of its pending applications;

M. A judgment that Go Hub Group's registration for TRUCK HUB (Registration No. 5,654,896) is cancelled under 15 U.S.C. § 1119;

N. An award of compensatory and punitive damages, under the authority described above and any other applicable authority;

O. Injunctive relief, both preliminary and permanent, pursuant to 15 U.S.C. § 1116 and/or any other applicable authority, prohibiting Go Hub Group from continuing to violate Hub Group's rights in any way;

P. A judgment that Go Hub Group's acts of trademark infringement, false

designation or origin, and unfair competition warrant a finding that this is an exceptional case;

Q.     An award of reasonable attorneys' fees incurred herein pursuant to 15 U.S.C.

§ 1117 and/or any other applicable authority;

R.     An award of Hub Group's costs and expenses;

S.     An award of pre- and post-judgment interest; and

T.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Hub Group demands a trial by jury on all issues properly tried thereto.

Dated this 19th day of November, 2019.          Respectfully submitted,

*/s/ Matthew J. Duchemin*
Matthew J. Duchemin, Bar No. 1027594
Martha Jahn Snyder, Bar No. 1070865
Anita Marie Boor, Bar No. 1092737
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, Wisconsin 53703-3095
Tel.:  (608) 251-5000
matthew.duchemin@quarles.com
martha.snyder@quarles.com
anita.boor@quarles.com

Christian G. Stahl, ARDC No. 6290825
QUARLES & BRADY LLP
300 N. LaSalle Street, Suite 4000
Chicago, IL  60654
Tel.: (312) 715-5000
christian.stahl@quarles.com

***Attorneys for Plaintiff Hub Group, Inc.***