**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HUB GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-cv-7648 |
| | ) | |
| GO HUB GROUP HOLDINGS, CORP., | ) | Judge John J. Tharp, Jr. |
| ASSETCO FREIGHT BROKERS, | ) | |
| INC., FREIGHT HUB CORP., TEAM | ) | |
| DGD, INC., LTL HUB CORP., WHSE | ) | |
| HUB, INC., HAZMAT HUB, INC., | ) | |
| LOGISTICS HUB GROUP, INC., | ) | |
| TRUCK HUB LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In this dispute between supply chain companies that offer similar services and use near-identical marks, Plaintiff Hub Group, Inc. sued Go Hub Group Holdings, Corp., and its eight subsidiaries, AssetCo Freight Brokers, Inc., Freight Hub Corp., Team DGD, Inc., LTL Hub Corp., WHSE Hub Inc., Hazmat Hub, Inc., Logistics Hub Group Inc., and Truck Hub LLC, for trademark infringement. Hub Group maintains that Go Hub used a similar set of trademarks to market and sell its trucking-related services through its eight subsidiaries, in violation of the Lanham Act as well as the Illinois Deceptive Trade Practices Act. Go Hub has moved to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the Southern District of Florida. Because specific personal jurisdiction is appropriate in this district and venue transfer would not be in the interest of justice, Go Hub's motions are denied.

## BACKGROUND

Hub Group is an Illinois-based supply chain solutions provider that offers services across

the country, including trucking and logistics management. Compl. ¶¶ 1, 57, ECF No. 39.[1] Over the past fifty years, it has become one of the largest transportation management companies in the United States. *Id.* ¶ 62. Since early 1986, Hub Group has used variations of the trademark "HUB," for its commercial activities, including intermodal, truck brokerage, dedicated trucking, managed transportation, freight consolidation, warehousing, international transportation, and logistics services. *Id.* ¶ 67. The Hub marks are known for their distinctive use of the word "HUB" and include, among others, Hub Group, Hub Group Dedicated, Hub Group Dedicated Services, Hub Group Trucking, HubPro, and Hub Group Capacity Solutions. *Id.* ¶ 68. Hub Group has acquired common law rights to these marks and owns a number of registrations for them. *Id.* ¶¶ 69-70. The registrations grant Hub Group exclusive rights to its marks for specified services. *Id.* ¶¶ 71-79. Hub Group has also invested substantially in marketing and promoting its transportation management services through these marks and has established goodwill for its services sold under their names. *Id.* ¶ 85. According to Hub Group, its customers and the public at large have come to recognize Hub Group's HUB marks and associate them with its services. *Id.* ¶ 82.

This case stems from Go Hub's entrée into the trucking services field and its use of similar marks, beginning in November 2017. *Id.* ¶¶ 31, 101 Go Hub, a Florida-based company, also provides nationwide transport services and develops and sells transportation-related services. *Id.* ¶¶ 2, 89. To promote and sell these services, Go Hub markets itself as the "Hub" family, runs the "Freight Hub Group" website, and oversees eight subsidiary entities that provide distinct services. *Id.* ¶¶ 90-93. Go Hub and its subsidiaries collectively refer to themselves as "Freight Hub Group," but they operate in different capacities and engage in distinct services. *Id.* ¶ 95. The organizational breakdown is as follows: AssetCo is the main operating company and holds freight brokerage

---

[1] For purposes of this Opinion, the Amended Complaint is referred to as "Complaint."

authority from the United States Department of Transportation. Compl. ¶ 124. Freight Hub, d/b/a "Dray Hub," Team DGD, d/b/a "FTL Hub," and LTL Hub are Freight Hub Group's three distinct motor carrier operations. MTD at 4, ECF No. 54. Dray Hub and LTL Hub offer drayage and local delivery services, respectively, in South Florida, while FTL Hub engages in transport services departing from the Miami area. *Id.* WHSE Hub provides warehouse services in South Florida. *Id.* at 3-4. Hazmat Hub is a hazardous material declaration operation, and Logistics Hubs is an equipment holding company for the subsidiaries. *Id.* at 4. And finally, Truck Hub is the holding company for Freight Hub Group's proprietary transportation management software, which is used exclusively by its motor carriers. *Id.* Go Hub has applied with the U.S. Patent and Trademark Office (USPTO) for registration of several of its marks. Eight of its applications have been denied, in part because of the "overall similarity of the marks and relatedness of the services" to Hub Group. Compl. ¶¶ 146, 148.

In response to Go Hub's use of the marks, on November 5, 2019, Hub Group sent a demand letter to Go Hub's registered trademark counsel. *Id.* ¶ 151. On February 21, 2020, upon receipt of a Letter of Protest from Hub Group, the USPTO suspended applications for FTL Hub, LTL Hub, Hazmat Hub, and Dray Hub. *Id.* ¶ 149. Further, Hub Group has initiated an opposition to Go Hub's applications to register Truck Hub and WHSE Hub. *Id.* ¶ 150.

Hub Group filed suit against Go Hub and its subsidiaries on November 19, 2019. ECF No. 1. Go Hub now moves to dismiss the complaint against it in its entirety, or in the alternative, transfer this case to the Southern District of Florida. ECF No. 54.

## DISCUSSION

Go Hub argues that this Court may not exercise personal jurisdiction over it and should dismiss this action pursuant to Rule 12(b)(2), or alternatively transfer this case to the Southern

District of Florida. While the plaintiff need not allege facts establishing personal jurisdiction in the complaint, "a plaintiff bears the burden of establishing that the Court may exercise personal jurisdiction over the defendants once defendants move to dismiss for lack of personal jurisdiction." *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). Although the Court is typically constrained to the pleadings at this stage, it may consider written materials outside of the pleadings on a Rule 12(b)(2) motion to dismiss. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If the Court rules on such a motion without the need for an evidentiary hearing, as is the case here, the plaintiff must only plead a *prima facie* case of personal jurisdiction. *Id.* at 782-83. Further, all factual disputes will be resolved in the plaintiff's favor. *Id.*

## I.    Personal Jurisdiction

Personal jurisdiction typically takes two forms: general or "all-purpose" jurisdiction and specific or "conduct-linked" jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). A defendant may also consent to jurisdiction in a forum; because personal jurisdiction is a "waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (internal quotations omitted). Hub Group argues that personal jurisdiction is appropriate over Go Hub because under all of these jurisdictional theories. The Court addresses each in turn.

### A.  Consent to Jurisdiction

Under the Federal Motor Carrier Act ("FMCA"), a motor carrier is required to designate an agent to receive service of process in any state in which it operates. *See* 49 U.S.C. § 13304(a). Hub Group contends that Go Hub has consented to jurisdiction in Illinois by designating an agent for service of process under the FMCA in the state. Consent to such jurisdiction would render Go

4

Hub's contacts with Illinois irrelevant to establishing personal jurisdiction. Yet, whether designating an agent for service of process under the FMCA can sustain personal jurisdiction remains an open question in the Seventh Circuit. Arguing that it can, Hub Group relies heavily on *R.R. Donnelly & Sons Company v. Jet Messenger Services*, in which the court found that a defendant who designated an agent under the FMCA in Illinois had consented to personal jurisdiction in the state. No. 03 C 7823, 2004 WL 1375402, at *3-4 (N.D. Ill. May 25, 2004). But that decision pre-dated *Daimler*, which distilled the general jurisdiction analysis down to whether a corporation is "at home" in a forum state, either by being incorporated or operating its principal places of business there.

In *Daimler*'s wake, district courts have rejected the proposition that registering an agent under the FMCA in a certain state renders a corporation "at home" there. *See Carson v. Western Express*, 19 Civ. 2227 (ER), 2019 WL 6050730, at *3 (S.D.N.Y. Nov. 14, 2019) (finding post-*Daimler* that "designation of an agent for service alone cannot provide this Court with general personal jurisdiction over Defendants"); *Hegemann v. M&M American*, No. 2:18-cv-00064, 2018 WL 4502181, at *6 (D. Vt. Sept. 20, 2018) (finding that defendant's registration of an agent under the FMCA in Vermont did not constitute consent to be sued there); *Western Express, Inc. v. Villanueva*, No. 3:17-cv-01006, 2017 WL 4785831, at *6 (M.D. Tenn. Oct. 24, 2017) (same). *But see Grubb v. Day to Day Logistics*, No. 2:14-CV-01587, 2015 WL 4068742, at *4 (S.D. Ohio July 2, 2015) (following Eighth Circuit precedent in finding FMCA subjected defendant to personal jurisdiction in forum state, even post-*Daimler*).

This Court agrees with the myriad other courts that have found designating an agent under the FMCA insufficient to sustaining general personal jurisdiction over a defendant. The *Daimler* court rejected the proposition that "the commission of some single or occasional acts of the

corporate agent in a state may sometimes be enough to subject the corporation to" general jurisdiction in that state. 571 U.S. at 126-27 (quoting *International Shoe v. State of Washington, Office of Unemployment Compensation & Placement*, 326 U.S. 310, 318 (1945)). It follows that designating an agent to receive service of process for Go Hub in Illinois, one of 48 agents Go Hub has designated in each of the contiguous states, should not alone open it up to suit in the forum.

### B. General Jurisdiction

Neither can this Court exercise general jurisdiction over Go Hub based on it being "at home" in Illinois. Hub Group advocates for the contrary, asserting that general jurisdiction is warranted because Go Hub has developed continuous and systematic contacts with Illinois through its extensive sales to Illinois residents, its branding of itself as a nationwide trucking service, and driving its trucks on Illinois roads.

Again, under *Daimler*, the "paradigm" forums of general jurisdiction are the defendant's place of incorporation or principal place of business. 571 U.S. 117, 137 (2014). Illinois does not fit either category: Go Hub and its subsidiaries are incorporated in Florida and operate their principal places of business there. The *Daimler* court left open "the possibility that in an exceptional case … a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render a corporation at home in that State." *Id.* at 761 n.19. It offered the example of *Perkins v. Benguet Consolidated Mining Co.*, in which an Ohio court was able to exercise jurisdiction over a foreign mining operation because it was forced to temporarily move its principal place of business to the state during World War II. This case is not so exceptional. Go Hub has neither consented to being sued in Illinois nor has it set up contacts that are so systematic and continuous as to render it at home in the state. As a result, this Court does not have general personal jurisdiction over Go Hub.

### C. Specific Jurisdiction

Determining whether specific jurisdiction exists over a defendant is a three-pronged analysis. It is appropriate where "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities;" and (3) its exercise "comport[s] with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart, Indiana*, No. 20-2919, 2021 WL 1827318, at *4 (7th Cir. May 7, 2021).

Hub Group draws on several factors to support its contention that Go Hub has purposefully directed its activities at Illinois, among them its interactive website, its alleged presence on Illinois roads with the infringing marks, and its volume of sales to Illinois customers. To begin, Hub Group points to Go Hub's promotional efforts including its interactive website, which features a demo of its software tracking FTL trucks as they travel across the United States. The Seventh Circuit has made it clear, however, that an interactive website is not, standing alone, a sufficient basis for personal jurisdiction. *See Advanced Tactical Ordnance Sys., Ltd. v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("Having an 'interactive website' . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible.").

As for the use of Illinois roads, the Supreme Court has long rejected the notion that the isolated use of interstate roads may expose a defendant to personal jurisdiction in a forum, absent the defendant's purposefully direction of its activities toward the state. *See Ford Moto Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1028 (2021) (personal jurisdiction was proper in Montana and Minnesota, where underlying accidents occurred, in part because defendant had purposefully availed itself of the states' commercial markets); *World-Wide Volkswagen Corp.*

*v. Woodson*, 444 U.S. 286, 288, 298 (1980) (finding no basis for personal jurisdiction over defendant dealerships in Oklahoma where only contact with state consisted of accident on Oklahoma highway). Hub Group attempts to thread the "purposeful direction" needle by asserting that it is at least "plausible" that FTL Hub trucks on Illinois roads bore the "FTL HUB" mark, and thus targeted the forum. A hypothetical connection between the defendant's contacts and the plaintiff's injury, however, does not suffice. *See Curry v. Rev. Labs., LLC*, 949 F.3d 385, 401 (7th Cir. 2020) (no personal jurisdiction where connection between interactive website and purchase of infringing products remained purely hypothetical). Accordingly, Go Hub's trucks potentially displaying the infringing marks on Illinois roads remains insufficient to finding personal jurisdiction.

That leaves Go Hub's sales to Illinois customers, which, according to Hub Group, exceeded $2.25 million over the past four years. That figure represents Go Hub's sales to Chicago-based Coyote Logistics Group, one of Go Hub's largest customers. Go Hub protests the reliance on its sales to Coyote Logistics, arguing that their relationship predates Go Hub's adoption of the "HUB" mark and that it only dealt with Coyote via a brokerage in Atlanta, Georgia. Indeed, courts have found personal jurisdiction lacking where a defendant initiated the relationship with an in-state contact via an out-of-state contact. *See Hall's Specialties, Inc. v. Schupbach*, 758 F.2d 214, 217 (7th Cir 1985) ("To make [the defendant] susceptible to suit in Indiana we believe he would have had to knowingly solicit (in more than a general way) the sale there."); *Solo Cup Co. v. First Southwest Vending & Food Service*, No. 07 C 4384, 2008 WL 2787442, at *5 (N.D. Ill. July 17, 2008) (no personal jurisdiction where defendant did not initiate an agreement with the plaintiff in the forum state); *Lake Lite v. Universal Forest Products, Inc.*, No. 1:14-CV-337 JD, 2015 WL 4626919, at *5 (N.D. Ind. Aug. 3, 2015) (no personal jurisdiction where it remained unclear how

defendants contacted a company in the forum state).

Even putting aside Go Hub's sales to Coyote Logistics, however, Hub Group has provided services to other Chicago-based clients since it began using the "HUB" mark in late 2017. Illinois residents account for 151 of Freight Hub Group's 4,156 contacts, defined as companies or individuals who have requested information through the defendants' website or provided their mailing information to the defendants. Go Hub's 2019 sales records reveal $135,855.37 in sales to "C.H. Robinson Inc. IL" as well as several sales to other Illinois clients that range in the hundreds to thousands of dollars. ECF No. 61-12. Hub Group identifies several other Illinois-based clients Go Hub has developed long-term relationships with and received substantial revenues from, including Kuehne & Nagel, Vanguard Logistics, and BDP International. Go Hub attempts to counter the import of these relationships by claiming that its sales to Illinois customers amounted to only $61,768.21 from March 6, 2019 to December 31, 2019 and constituted less than 1% of its total income in 2019. In Go Hub's telling, such a negligible amount cannot support personal jurisdiction.

It remains unclear to why Go Hub concentrates solely on its 2019 sales to Illinois customers. Even so, courts have routinely found a relatively small volume of sales sufficient to support personal jurisdiction. That is because "[t]here is no per se requirement that the defendant especially target the forum in its business activity; it is sufficient that the defendant reasonably could foresee that its product would be sold in the forum." *Curry v. Revolution Labs.*, 949 F.3d 385, 399 (7th Cir. 2020). *See id.* at 390, 402 (finding defendant purposefully targeted the forum state where it sold products to 767 Illinois consumers); *Illinois v. Hemi Group*, 622 F.3d 754, 755, 760 (7th Cir. 2010) (finding sale of three hundred packs of cigarettes to a single customer sufficient to sustain specific personal jurisdiction); *Pumponator Inc. v. Water Sports, LLC*, 868 F. Supp. 2d

742, 749 (N.D. Ill. 2012) (finding minimum contacts in forum state where defendant sold goods to 147 Illinois storefronts in the past seven years); *Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, No. 10-CV-4535, 2010 WL 4877708, at \*7 (N.D. Ill. Nov. 23, 2010) (finding gross revenue of 1.2% from Illinois customers, over company's entire existence, was sufficient for personal jurisdiction). Like the defendant in *Curry*, Go Hub's claim that it did not particularly target Illinois more than any other of the 48 states in which it operates in remains tangential to this analysis. Its volume of sales to Illinois consumers, either in excess of $130,000 or $2.4 million depending which party one asks, speaks for itself. Its sales demonstrate that Go Hub purposefully maintained commercial contacts with Illinois and could reasonably have foreseen Illinois residents purchasing its services. Accordingly, Hub Group has satisfied the first prong of the specific jurisdiction analysis.

The question thus turns to whether Hub Group's injury arises out of or relates to Go Hub's contacts with Illinois. Hub Group identifies the injuries it has suffered as lost profits, a likelihood of consumer confusion, mistake, deception, and irreparable injury to its reputation and goodwill. The Seventh Circuit has affirmed that trademark infringement often results in irreparable harm because of the victim's "inability to control the nature and quality of the defendants' goods," thus causing unquantifiable reputational harm. *Int'l Kennel Club of Chicago, Inc. v. Might Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988), *abrogated on other grounds by Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Hub Group argues that Go Hub's sales to Illinois customers is related to the stated injuries because those sales necessarily traded on the use of the infringing marks, either in the sales themselves, their advertisement, or their distribution. The Court agrees. This case centers on Hub Group's claim that Go Hub's infringement led to lost profits, confusion, and reputational injury, all of which are implicated in its sales to Illinois

10

customers. *See Curry*, 949 F.3d at 401 (holding injury of trademark infringement was related to defendant's sales because its "sales are inextricably linked to the alleged tortious activity underlying [the plaintiff's] claims"). Go Hub's Illinois-based contacts are therefore inextricably related to its injurious conduct.

Finally, Go Hub has failed to demonstrate that exercising personal jurisdiction over it would offend notions of fair play and substantial justice. In making this determination, the Court examines factors such as "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of states in fundamental substantive social policies." *Burger King*, 471 U.S. at 476-77 (internal quotations omitted). These factors aid a defendant where the court finds personal jurisdiction based on a "lesser showing of minimum contacts," but must be compelling where minimum contacts are firmly established. *Id.* at 477.

Here, Go Hub focuses solely on the first and fourth factors, arguing first that litigation in Illinois will constitute an extreme burden because its anticipated trial witnesses are the five key employees running the business. Go Hub may face a greater burden in being forced to litigate in Illinois than it would in Florida, but it has not shown that this burden is extraordinary for a non-resident defendant. *See Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir. 2012) (finding no lack of fair play due to inconvenience in litigating in another state because "out-of-state defendants *always* face such a burden, and there is no suggestion that [the defendant's] hardship would be greater" than the average non-resident defendant). Further, Go Hub asserts that the most efficient resolution of the case lies in the Southern District of Florida, which is home to an allegedly less congested docket than the Northern District of Illinois. This line of reasoning misunderstands the "most

11

efficient resolution of controversies" inquiry. In evaluating this factor, courts consider the location of witnesses, the location of the injury, which state's law governs, and whether jurisdiction is needed to prevent piecemeal litigation. *Newsome v. Gallacher*, 722 F.3d 1257, 1274 (10th Cir. 2013). Go Hub does not raise any of these factors, and the question of docket congestion is left to the venue transfer determination. Go Hub has not offered a persuasive case for lack of fair play or substantial justice, and therefore, the Court finds that exercising specific personal jurisdiction over Go Hub is appropriate.

### D. Imputing Contacts to Subsidiaries

Go Hub argues that even if this Court were to find personal jurisdiction over any of its subsidiaries, it may not impute those contacts to the parent company or any of its other subsidiaries. In other words, it maintains that personal jurisdiction over one subsidiary does not guarantee personal jurisdiction over all of them. Hub Group asserts, however, that the subsidiaries' contacts may be imputed on to the parent corporation as well as to Go Hub's other sub-entities because there are multiple grounds to pierce the corporate veil and the defendants have acted as one.

Typically, "jurisdiction over a subsidiary is not sufficient to confer jurisdiction over an out-of-state parent," even assuming the parent exerts some degree of control over the subsidiary. *LaSalle Nat. Bank v. Vitro, Sociedad Anonima*, 85 F. Supp. 2d 857, 864 (N.D. Ill. 2000) (quoting *Gruca v. Alpha Therapeutica Corp.*, 19 F. Supp. 2d 862, 864-65 (N.D. Ill. 1998)). An exception arises where the parent and subsidiary have failed to observe corporate formalities or where the parent exerts an "unusually high degree of control" over the subsidiary, in which case the subsidiary's contacts will be imputed on to the parent. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000); *see also City of Greenville, Ill. v. Sygenta Crop Protection, Inc.*, 830 F. Supp. 2d 550, 555 (S.D. Ill. 2011) ("where corporate

12

formalities are not observed such that piercing the corporate veil is warranted or where a parent dominates the subsidiary, a court may have personal jurisdiction over a parent based on the subsidiary's contacts").

Such relationships can be complex to disentangle. Courts will look to a variety of factors in their analysis, including "(1) whether officers or directors are the same; (2) how much control is exerted by parent over daily affairs of its subsidiary; (3) whether parent arranges financing for and capitalization of subsidiary; (4) whether separate books, tax returns, and financial statements are kept; (5) whether parent holds its subsidiary out as agent; and (6) the method of payment made to parent by subsidiary." *Bray v. Fresenius Medical Care Aktiengesellschaft Inc.*, No. 06 C 50197, 2007 WL 7366260, at *6 (N.D. Ill. Aug. 30, 2007).

The parties dispute the degree of Go Hub's control over its subsidiaries as well as the underlying facts. In Go Hub's responses to Hub Group's interrogatories, Luis Lopez states that he is the sole shareholder, owner, director, officer, and president of each of the Freight Hub Group entities, per their by-laws. Not only does Mr. Lopez wholly own and control the Freight Hub Group entities, he controls, manages, and oversees the entities' day-to-day operations. Further, Go Hub identifies AssetCo as the account holder of a single bank account that is used for the defendants' operations and the Freight Hub Group entities. *See* ECF No. 39-1 at 11 ("That bank account is an operating account for the various businesses."). Relying on these responses, Hub Group characterizes the Freight Hub Group entities as a collective unit.

Go Hub contests these facts and maintains that its subsidiaries are distinct entities, based on Mr. Lopez's deposition. According to Go Hub, Lopez is president of only four of the entities (Go Hub, Truck Hub, AssetCo,, and FTL Hub), while Kenneth Amador is the president of the remaining five. This leadership structure contradicts that described in the interrogatory responses,

13

in which Amador is identified as the Container Drayage Manager for Dray Hub, Inc. and Lopez as the president of each individual entity. Go Hub also asserts that each entity maintains individual governing documents. While the subsidiaries maintain joint financial records, Lopez testified in his deposition that each entity holds its own bank account. Again, Lopez's interrogatory responses contradict this statement, as do the Profit and Loss reports provided, which list income and expenses for Freight Hub Group as a whole, rather than per subsidiary. *See* Ex. 41, ECF No. 61-22.

In evaluating supporting documents on a Rule 12(b)(2) motion, "the plaintiff is entitled to have any conflicts in the affidavit (or supporting materials) resolved in its favor." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). With that in mind, the Court accepts Hub Group's description of Go Hub's corporate structure, as supported by Go Hub's interrogatory responses. Hub Group has plausibly alleged that Go Hub's entities function as a single unit, given the fact that they operate with a single bank account and are all controlled, owned, directed, and presided over by Mr. Lopez. Because Go Hub does not observe corporate formalities and exerts a high degree of control over its subsidiaries, it is appropriate for this Court to exercise jurisdiction over all eight of its subsidiaries based on its finding of personal jurisdiction over the parent.

## II. Venue Transfer

Even if this Court were to find personal jurisdiction proper over Go Hub and its subsidiaries, Go Hub argues that venue should be transferred to the Southern District of Florida. A district court may transfer a civil case to another court "for the convenience of parties and witnesses" and "in the interest of justice," if venue would be proper in the proposed location. 28 U.S.C.A. § 1404(a). Venue would indeed be appropriate in the Southern District of Florida as it is

where Go Hub is incorporated and operates its principal place of business. The district court is granted discretion in deciding whether to transfer venue and may consider the following private interest factors: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the convenience of the parties; and (4) the convenience of the witnesses." *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856-67 (N.D. Ill. 2007). The Court will also consider public interest factors, including the court's familiarity with the relevant law and the efficient administration of justice. *Moore v. Motor Coach Industries, Inc.*, 487 F. Supp. 2d 1003, 1006 (N.D. Ill. 2007).

Regarding private interest factors, the plaintiff's choice of forum is generally afforded deference and all the more so when it is the plaintiff's home state. *Id.* at 857. The defendant may offset that deference if it provides a strong showing on the other factors. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 (7th Cir. 2010). Here, Hub Group has selected Illinois, which is where it maintains its principal place of business. Go Hub argues that the balance of factors still favors the Southern District of Florida, due to the convenience of the parties and the convenience of the witnesses. Go Hub states that none of its potential litigation witnesses, evidence, or discovery documents are located in Illinois and its five key witnesses reside in Miami. Further, Go Hub asserts that litigating the case in Illinois would constitute an extreme burden because its trial witnesses and corporate representatives run the day-to-day operations of the business.

None of these arguments is availing. Documents can easily be sent electronically or shipped between the two forums, and neither party has argued that the documents involved present any particular challenge. *Rugamboa v. Rungenga*, No. 06 C 1142, 2007 WL 317035, at *2 (N.D. Ill. Jan. 30, 2007) (finding access to records has no bearing on the venue transfer analysis unless the records are "extraordinarily voluminous or otherwise difficult to ship"). As far as the

convenience of the parties and witnesses, the analysis cuts either way. Go Hub contends that almost all of its relevant witnesses and party witnesses are located in the Southern District of Florida. But under Rule 45(c), only a party or a party's officer may be required to attend a trial or deposition in person. Mr. Lopez has identified himself as the sole officer of each of the Freight Hub Group entities, and thus litigation in this district presents no clear inconvenience to the defendants' other witnesses. Moreover, Hub Group has identified potential employee witnesses, which it claims outnumber Go Hub's, as well as non-party witnesses who reside in or around the forum. At best, this factor is neutral and "merely shifting convenience from one party to another is not a sufficient basis for transfer." *Research Automation*, 626 F.3d at 978.

Turning to the public interest factors, Go Hub cites the Southern District of Florida's lesser docket congestion as a point in favor of transfer, though the parties dispute the degree of difference between the courts' caseloads.[2] In considering the importance of docket congestion, the Seventh Circuit has stipulated that the emphasis must be on the "speed with which a case can come to trial and be resolved," not on clearing the caseload. *In re Ryze Claims Solutions, LLC*, 968 F.3d 701, 710 (7th Cir. 2020). Based on the statistics Go Hub presents, this factor weighs in favor of transfer, as speed to trial is approximately twice as long in this district as compared to the Southern District of Florida.[3] But as Hub Group rightly notes, the pandemic has delayed trial dates across the country and statistics taken from 2019 likely are not accurate today. Further, this factor alone cannot be determinative, or else any defendant could transfer cases to districts with faster "speed to trial"

---

[2] Removing one outlier judge, Hub Group finds that the average judge on the Northern District of Illinois holds 230 cases, as compared to the Southern District of Florida's average of 145. Go Hub, in turn, puts the caseload at 745 cases per judge in the Northern District of Illinois and 371 cases per judge in the Southern District of Florida.

[3] As of September 30, 2019, the median time from filing to trial in the Southern District of Florida was 18.6 months for civil cases, as compared to the Northern District of Illinois's median time of 36.7 months. Ex. C, ECF No. 17-3.

rates. *See Frey v. Fraser Yachts*, No. 89 C 9109, 1990 WL 93364, at *4 (N.D. Ill. June 20, 1990) ("Docket congestion alone does not warrant a transfer of venue."). Go Hub does not argue for any other public interest factors that tip the transfer calculation towards the Southern District of Florida. On balance, both the public and private factors indicate that transferring this case would not be in the interest of justice. The motion to transfer venue is accordingly denied.

*    *    *

For the reasons discussed, Go Hub's motion to dismiss for lack of personal jurisdiction and its motion to transfer venue to the Southern District of Florida are denied.

Dated: September 20, 2021

John J. Tharp, Jr.
United States District Judge